**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:14-cr-43** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **RICHARD ROMAN,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

## I.   INTRODUCTION

This matter comes before the Court on Defendant Richard Roman's Motion for Compassionate Release. (ECF No. 50). For the following reasons, Mr. Roman's Motion is **DENIED**. (*Id.*). This Court further **ORDERS** the parties to submit a joint or separate status report within thirty days of the date of this order updating the Court on efforts to provide Mr. Roman with adequate protections for his legal blindness. (*See* ECF No. 53).

## II.   BACKGROUND

On February 27, 2014, Mr. Roman was indicted with attempting knowingly to persuade, induce, or entice an individual whom he believed to be an 11-year-old female to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (ECF Nos. 9, 22). On May 9, 2014, Mr. Roman pled guilty to one count of coercion and enticement, in violation of 18 U.S.C. §§ 2422(b). On November 7, 2014, the Court sentenced Mr. Roman to 144 months' incarceration with credit for time served. (ECF 40). Mr. Roman is currently serving his sentence at Federal Correctional Institution ("FCI") Fort Dix in Fort Dix, New Jersey. Mr. Roman's release date is scheduled for April 8, 2024. On October 31, 2020, Mr. Roman requested compassionate release from the warden based on his

1

medical conditions. The warden did not respond to Mr. Roman's request, and 30 days have expired since said request.

Mr. Roman argues that his medical conditions establish "extraordinary and compelling" reasons justifying compassionate release. Specifically, Mr. Roman is obese, with a BMI of 30.6. Moreover, when he was convicted, Mr. Roman was suffering from glaucoma. Delays in treatment while imprisoned, however, meant that this otherwise treatable illness rendered Mr. Roman legally blind. (*Id.* at 2). Mr. Roman also contracted COVID-19 previously and now suffers from long-hauler symptoms. (*Id.* at 3). Of these three medical conditions, Mr. Roman only argues that two—obesity and long-hauler symptoms—are relevant to the COVID-19 pandemic. His legal blindness is a separate basis for the desired relief, irrespective of the pandemic.

On February 17, 2021, the Government filed a Response in Opposition to the Motion for Compassionate Release. (ECF No. 52). The Government contends Mr. Roman's Motion fails on the merits because Mr. Roman has failed to establish "extraordinary and compelling reasons" justifying his release and that the sentencing factors under 18 U.S.C. § 3553(a) weigh against his release. (*Id.*).

### III.    STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or 30-day waiting requirement has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). A district court's decision under § 3582(c)(1)(A) will be reviewed for abuse of discretion, and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, 980 F.3d 1098, 1113 (6th Cir. Nov. 20, 2020).

In *United States v. Jones*, the Sixth Circuit clarified the mechanics of compassionate review under 18 U.S.C. § 3582 where an incarcerated person has brought a motion on his own behalf. In *Jones*, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.* at 1101.

The *Jones* court set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id.* at 1103. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id.* Second, a court must determine whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* at 1109. Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* at *6 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

## IV. LAW & ANALYSIS

### A. Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may reduce a term of imprisonment, but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *see also Alam*, 960 F.3d at 832. The Sixth Circuit held that this requirement is

not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Alam*, 960 F.3d at 833.

On October 31, 2020, Mr. Roman submitted a request for compassionate release to the warden at Fort Dix. Mr. Roman submits that his case is ripe for review by this Court because it has been more than 30 days since he submitted his request to the warden. The Government appears to concede that Mr. Roman has met the statutory exhaustion requirements, so this threshold requirement is not in contention, and the Court assumes it is met. (ECF No. 51).

## B.    Extraordinary and Compelling Reasons

Under the analysis set forth in *Jones*, this Court must determine whether "extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i). This court has "full discretion to define 'extraordinary and compelling'" without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1109.

In Mr. Roman's Motion, he seeks release for his obesity, long-hauler symptoms, and legal blindness. In other words, Mr. Roman posits two separate bases for release: (1) obesity, which poses a risk of a severe illness if he contracted COVID-19 again; and (2) his legal blindness since he is unable to get proper treatment while incarcerated. The Government, in opposition, argues that Mr. Roman failed to establish extraordinary and compelling reasons. (ECF No. 51). This Court discusses whether each of these conditions amount to extraordinary and compelling reasons below.

The Centers for Disease Control identifies obesity as an underlying condition that can make an individual more likely to get severely ill from COVID-19.[1] Given his previous COVID-19 diagnosis, coupled with his ongoing symptoms, Mr. Roman is concerned that if he were to fall ill again, he might suffer even more severe symptoms in light of his obesity. As an initial matter, this

---

[1] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last access 7/13/2021 (5:00 p.m.).

Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerabilities. The spread of COVID-19 in prisons has been well documented, and Fort Dix FCI, where Mr. Roman is confined, is no exception. One-thousand seven-hundred and twenty-nine incarcerated persons and ninety-five staff have contracted the virus since the pandemic began.[2] Tragically, two individuals have died from this virus while in the care of Fort Dix. Vaccination distribution, however, is well underway: 254 staff and 1,689 incarcerated individuals have received their COVID-19 vaccinations.[3]

The Government argues that "general risks of COVID-19" do not warrant a reduction in sentence. (ECF No. 51 at 6). But Mr. Roman's fears about contracting COVID-19 once again are not general. They are specific to his underlying medical condition—i.e., obesity and a weakened immune system since his previous COVID-19 diagnosis. The Government eventually concedes that the CDC has identified obesity as a factor that increases one's COVID-19 risk, but nevertheless concludes that the risk is trivial. The Government writes: "[O]besity differs from many of the other chronic illnesses that the CDC listed as creating an increased risk, in that it is not a static condition that once diagnosed cannot be changed." (*Id.*).

This argument is specious. Plenty of the illnesses that the CDC has identified as increasing one's COVID-19 risk are not necessarily *chronic* conditions. Among them: pregnancy, substance abuse disorders, and, as is relevant here, obesity. Sometimes, these conditions are capable of being changed. That possibility of change does not change the present, however.

Even more unavailing is the Government's argument that Mr. Roman's commissary purchases of sugary and low-nutritional foods indicate that he is not taking an active role in maintaining his health, and that that somehow cuts against his request for relief. Prisons are not

---

[2] BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/index.jsp, last access 7/13/2021 (5:00 p.m.).
[3] *Id.*

famed for their lemon kale salads, and a look at the Fort Dix commissary list demonstrates a dearth of healthy options.[4] Scolding Mr. Roman for not making healthier food purchases while in prison is like scolding him for not spending more time outdoors while in prison: his options are limited.[5] Even if the commissary were a veritable garden of cucumbers and sprouts, this Court is reluctant to assume a paternalistic role over adults capable of deciding what to eat. A person might eat chips and cookies and still not want to die from a horrifying and deadly disease. Those two realities coexist comfortably.

On the other hand, it is unclear if Mr. Roman has received a COVID-19 vaccination yet, but given that Fort Dix has been administering vaccinations with dispatch, it seems likely he would be able to receive one if he so chose. The existence of the vaccinations and absent evidence that Mr. Roman has been unable to receive a desired vaccination, Mr. Roman's concerns about contracting COVID-19 given his obesity are not as concerning as it might have been at the time Mr. Roman sought relief.

Thus, this Court finds that Mr. Roman's obesity and long-hauler symptoms do not amount to extraordinary and compelling reasons justifying release, absent evidence that Mr. Roman: (1) has not been able to receive a COVID-19 vaccination despite wanting one; or (2) received a vaccination but has other serious concerns relating to his obesity and long-hauler symptoms.

---

[4] Of the food and beverage items, there are the following categories: (1) Beverages (listing seven items, including five carbonated beverages); (2) Soups & Rice (listing nine items, with one low-sodium option); (3) Chips (listing seven types of chips); (4) Snacks & Condiments (with two types of squeeze cheese); (5) Meat & Fish; (6) Cookies & Crackers (listing twelve items); (7) Pastries & Wraps (including cream cheese cake, honey buns, and cupcakes); (8) Meals & Dry Foods (with only one non-cheese or non-meat option); (9) Health Foods & Nuts (listing ten items, including fruit snacks and a dill pickle pouch); (10) Hot & Cold Cereals; (11) Candy (listing eight items); (12) Sugar-free Candy (listing three items); (13) Drink Mix , Coffee, and Tea (including Hawaiian Punch); (14) Vitamins; and (15) Ice Cream. FCI Fort Dix Commissary https://www.bop.gov/locations/institutions/ftd/FTD_CommList.pdf, last accessed 3/30/2021 at 5:00 p.m.

[5] The Court understands that prisons are under financial stress, and this should not be construed as a vilification of prison staff or the BOP. Rather, it is an unfortunate reality of food deserts, of which a prison is certainly one.

This Court turns to the only remaining basis of relief: Mr. Roman's legal blindness. The Government argues that this is not a basis for compassionate release because blindness does not make COVID-19 worse. That is not what Mr. Roman argues. Rather, Mr. Roman argues that his blindness is a serious physical condition that substantially diminishes his ability to provide self-care in a prison context.

Glaucoma is a common and treatable condition.[6] Without intervention, however, blindness can follow.[7] That is, according to Mr. Roman's telling, exactly what happened here. The lack of proper care Mr. Roman describes is nothing short of alarming. Mr. Roman is supposed to meet with an eye doctor every three months, but he has not had one of these appointments since July 2019—evidently because contract physicians are not allowed in the prison due to COVID-19 restrictions. (ECF No. 50 at 12). What is more, Mr. Roman cannot socially distance because he is forced to rely on others' assistance to maneuver around the prison and complete basic tasks. His primary mobility aid is worn-out cane. (ECF No. 50 at 12). The prison is supposed to assign Mr. Roman an inmate to assist him with everyday tasks. But these inmates-turned-medical aids are often not able or willing to meet the tasks of being a caretaker. Thus, Mr. Roman is sometimes reduced to paying inmates directly for assistance. (*Id.*). As a result, Mr. Roman argues that his blindness is a basis for compassionate release in and of itself—but also because it renders social distancing nearly impossible.

The Government argues that the BOP did not cause any further loss of vision because Mr. Roman's had poor eyesight prior to being incarcerated. (ECF No. 51 at 13). The Government notes that Mr. Roman is given eyedrops and fails to use them as prescribed. Be that as it may, something

---

[6] CDC, *Don't Let Glaucoma Steal Your Sight!*, https://www.cdc.gov/visionhealth/resources/features/glaucoma-awareness.html  last access 7/13/2021 (5:00 p.m.).
[7] *Id.*

bad can get worse absent proper care—and that is what Mr. Roman alleges. He is not claiming that BOP caused his glaucoma but merely has failed to provide adequate and ongoing care to address a serious disease. Thus, this Court finds that Mr. Roman's legal blindness given the absence of sufficient medical care while incarcerated amounts to an "extraordinary and compelling" reason justifying release.

### C. Section 3553 Sentencing Factors Analysis

When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 2020 WL 6817488, at *11. A court does not need "specifically [to] articulat[e]" every single § 3553(a) factor in its analysis; rather, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* For a reviewing court, the record as a whole will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* at *11–12.

In support of his Motion for Compassionate Release, Mr. Roman argues that a reduction in his sentence would not diminish the seriousness of the offense or present a risk to the public. (ECF No. 50). The Government opposes this request on the grounds that the § 3553(a) factors weigh against this request for premature release. (ECF No. 51). The Government draws this Court's attention to the seriousness of the underlying offense. (*Id.*).

This Court must consider both the health risk to the individual and the interests served by continued incarceration based on the nature and seriousness of the offense. Considerations of public safety are at their zenith where the underlying offense indicates the defendant would pose a continuing danger to the community if released.

8

In this case, the facts of Mr. Roman's offense of conviction are heinous. He pled guilty to coercion or enticement of a female. The charges against the defendant were premised on his communications with an undercover officer who responded to an advertisement Mr. Roman placed on Craigslist, in which he sought sexual interaction with "girls of any age." (ECF No. 51 at 1). The undercover officer was posing as the parent of an 11-year-old female, and during the subsequent text message conversation between the officer and the defendant, they made arrangements to meet for purposes of the defendant engaging in sexual activity with the officer's fictitious daughter. (*Id.*). Mr. Roman was arrested soon after he arrived and confirmed to the agent that he wanted to engage in intercourse with the fictitious minor child.

This Court finds that the seriousness of the offense counsels in favor of denying his motion because Mr. Roman has not met his burden of proving that he would not pose a danger to others if released. The Court, therefore, finds that the retribution, deterrence, incapacitation, and rehabilitation interests served by the original sentence counsel against early release in this case. For these reasons, the Motion for Compassionate Release (ECF No. 29, 31) is **DENIED**.

## V.    CONCLUSION

For the reasons set forth above, Mr. Roman's Motion for Compassionate Release is **DENIED**. (ECF Nos. 50, 53). This Court, however, **ORDERS** that Government provide a separate or joint status report within thirty days from the entry of this order on the status of care to treat Mr. Roman's glaucoma-caused legal blindness, given the alarming absence of medical attention he alleges.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  July 26, 2021**

9