**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:14-cr-43** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **RICHARD ROMAN,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

This matter comes before this Court on Defendant Richard Roman's Motion for Early Termination of Supervised Release (ECF No. 73). For the reasons stated below, the Motion is **DENIED**.

## I.      BACKGROUND

On October 24, 2014, this Court sentenced Defendant Richard Roman to a term of incarceration of 144 months followed by a 20-year term of supervised release, after he pled guilty to coercion and enticement of a minor, that is, "using the Internet to attempt to persuade, induce, coerce, or entice an individual who has not attained the age of 18 years, to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b)." (ECF Nos. 28, 40).  Among the special conditions of his probation were that he: (1) "participate in substance abuse treatment and testing, as directed by the probation officer"; (2) "refrain from viewing or possessing any material containing child pornography"; (3) "install software to monitor computer activities on any computer the defendant is authorized to use at his own expense"; and register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA") and maintain said registration.    (*Id.* at 3).  The Judgment explains that the monitoring software required on Defendant's devices "may record any and all activity on the defendant's computer, including the

capturing of keystrokes, application information, Internet use history, email correspondence, and chat conversation" and "will be checked on a random basis."  (ECF No. 40 at 3).  It further made clear that Defendant: "has no expectations of privacy regarding computer use or information stored on the computer if monitoring software is installed and understands and agrees that information gathered by said software may be used against the defendant . . . ."; is prohibited "from attempting to remove, tamper with, or alter/circumvent in any way the software program"; and "must comply with the rules set forth in the computer monitoring participation agreement." (ECF No. 40 at 3).

At the time he was sentenced, Defendant suffered from glaucoma and cataracts and had extremely poor vision.  While serving the incarceration portion of his sentence at FCI Elkton and FCI Fort Dix, he received regular treatment for those conditions from both Bureau of Prison ("BOP") medical staff and outside medical providers. (ECF No. 57-2).  Despite those efforts, Mr. Roman's condition worsened, and he became legally blind.  His blindness was one of the primary bases for his numerous requests for compassionate release throughout 2021 and 2022.  (*See e.g.*, ECF Nos. 53, 62).  This Court denied the motions, and Defendant was in BOP custody from October 2014 until November 2, 2023, when he was released and began his term of supervised release.  He has been supervised by the U.S. Probation Office in the District of Puerto Rico since his release.

After just over a year on probation, on December 4, 2024, Mr. Roman filed a *pro se* motion for early termination of his supervised release (ECF No. 73). Although he is being supervised by probation officers in the District of Puerto, no transfer of jurisdiction has occurred yet.[1]  As such,

---

[1] Transfer of supervision is distinct from transfer of jurisdiction and is authorized by 18 U.S.C. § 3603(4), which instructs probation officers to "be responsible for the supervision of any probationer or a person on supervised release who is known to be within the judicial district."  18 U.S.C. § 3603(4).  As the Guide to Judiciary Policy explains, transfer of supervision "is a procedure . . . in which staff in the probation office with jurisdiction transfer the supervision of the case to another probation office, which assumes

his motion for early termination of supervised release is properly before this Court.[2]   On December 18, 2024, the Government opposed the motion.  (ECF No. 74).  On January 6, 2025, the U.S. Probation Office also opposed the motion in a letter to this Court.  This matter is now ripe for resolution.

## II.    STANDARD OF REVIEW

A district court may, after considering a subset of the sentencing factors set forth in § 3553(a), terminate a term of supervised release "at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).  The relevant sentencing factors to be considered on a motion for early termination of supervised release are:  the nature and circumstances of the offense; the history and characteristics of the defendant; whether adequate deterrence was afforded; protection of the public from further crimes of the defendant; providing the defendant with training and/or treatment; the sentencing range established by the guidelines; pertinent policy statements issued by the Sentencing Commission; the need to avoid sentence disparities; and the need to provide restitution to victims. *See id.*; 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

---

responsibility for enforcing all conditions and implementing all supervision strategies, including using local resources for intervention services."  *See* AO Guide § 610(a).

[2] *See United States v. Kaetz*, No. 24-1605, 2024 WL 3717090, at *2 n.4 (3d Cir. Aug. 8, 2024) ("[T]he District Court [for the Western District of Pennsylvania] sentenced [the defendant] and thus retained authority over his supervised release even though he resides and is being supervised in the District of New Jersey.  18 U.S.C. § 3583(e); *United States v. Johnson*, 861 F.3d 474, 479 (3d Cir. 2017); *Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009). And although 18 U.S.C. § 3605 'gives a court discretion to order a transfer' of supervised-release jurisdiction, the statute 'conditions transfer upon the acceptance of jurisdiction by the court to which the transfer is made.'" (quoting *United States v. Ohler*, 22 F.3d 857, 858-59 (9th Cir. 1994)).

The Guide to Judiciary Policy[3] also outlines some factors to consider when terminating post-conviction supervision. *See* Admin. Office of U.S. Courts, Guide to Judiciary Policy, vol. 8, pt. E (2018) [hereinafter "AO Guide"], available at https://www.uscourts.gov/file/78805/download. For a defendant who requests early termination during the first 18 months of supervision, "the appropriateness of early termination must be based on the person's overall progress in meeting supervision objectives," which includes that the person: (1) "substantially satisfied the requirements of the court order;" and (2) "demonstrates a willingness and capability to remain lawful beyond the period of supervision." *Id.* § 360.20(b)(1)-(2).

### III.    LAW AND ANALYSIS

Defendant seeks early termination of his supervised release for a number of reasons. First, he contends that he was "not aw[a]re of how difficult the supervised release process" would be in Puerto Rico. (ECF No. 73 at 2). He explains that he is "required to go to the[] psychologist twice per month," and "their office is [] over 90 minutes away." (*Id.* at 2–3). He also notes that he is "required to register every 90 days," which is a 30-minute drive. (*Id.* at 3). Mr. Roman further complains that, due to his terms of supervised release, his smartphone is not only monitored but also restricted, such that he is "not allowed any social media, dating or anything they deem inappropriate." (*Id.* at 4). According to Defendant, his supervisor had even told him that "if [he] got Netflix, [he] was required to give her the password." (*Id.*). Finally, Mr. Roman argues that he cannot drive and does not have anyone to drive him around. (*Id.* at 5). He maintains that, because

---

[3] The Guide to Judiciary Policy is the official repository of the federal judiciary's administrative policies. It is published by the Administrative Office of the United States Courts under the direction of the Judicial Conference of the United States, "the statutorily created body of federal judges that establishes policy for the administration of the Judicial Branch." *Williams v. United States*, 240 F.3d 1019, 1061 n.24 (Fed.Cir.2001) (citing 28 U.S.C. § 331).

4

he lives in a rural area, "there is no Uber or service like that," and his only option is a taxi, which would cost him $150 per trip. (*Id.*). He cannot afford such an expense, he explains, as he recently lost his Medicaid and has to purchase private health insurance. (*Id.*). As a blind man, he notes that "everything costs more for [him] because [he] ha[s] to pay people for everything." (*Id.*).

The Government, on the other hand, argues that Defendant has not shown full compliance with the terms of his supervised release or carried his burden to show that the relevant § 3553(a) factors support release. (*See generally* ECF No. 74). "Given the short amount of time [Defendant] has been on supervised release, the significant amount of work he needs to do before the risk he poses to the public is mitigated, and the serious nature of his crime," the Government contends that "the difficulties his physical condition and geographic location create are not sufficiently 'unusual or extraordinary' to warrant relief." (*Id.* at 5). The Government also notes that "[D]efendant's resistance to monitoring and restriction of his internet use, as conveyed in his motions, [] underscores how problematic his attitude towards supervision is." (*Id.* at 9). It argues that the monitoring condition is "directly related to the nature of his offense, which involved seeking out children on an online forum for sexual purposes." (*Id.*).

The U.S. Probation Office likewise recommends that Defendant's motion for early termination of release be denied. (*See* Letter from U.S. Probation Office (Jan. 6, 2025) (on file with this Court) [hereinafter "USPO Letter"]). It identifies a number of "challenges that continue to impact [Defendant's] community reintegration," noting that "Mr. Roman has limited eyesight, is unemployed, experiences mental health issues, lacks responsibility for offense conduct, blames external factors for his behaviors, and lives with his elderly mother who also has health issues." (USPO Letter at 1). In addition, the U.S. Probation Office notes that Mr. Roman's sex offender treatment provider had evaluated him and marked "his overall treatment progress []as []

5

unsatisfactory." *Id.* As recommended by the treatment provider and Mr. Roman's U.S. Probation Officer, "Mr. Roman has restricted access to dating sites, social media, and streaming services via his monitored computer device." (*Id.* at 2). Between January 2024 and January 2025, the U.S. Probation Office has addressed Mr. Roman "regarding his searching/viewing of high-risk content." (*Id.*). Because he still has "several dynamic risk factors that need to be appropriately addressed through treatment and monitored interventions with the U.S. Probation Office," the U.S. Probation Office opines that Mr. Roman should remain on supervised release. (*Id.*).

In his reply, Mr. Roman states that "[a]lthough the [government's] response is factually accurate, it fails to include crucial information that is relevant to [his] request." (ECF No. 75 at 1). Despite this concession, however, Mr. Roman quibbles with many of the Government's facts regarding his prior arrests. As to the device monitoring and electronic restrictions, he notes that "it[']s not so much the monitoring [he] object[s] to, i[t']s the restriction of normal non-sexual sites and social media along with the large cost." (ECF No. 75 at 8).

### A.    Section 3553(a) Factors

The first factor to consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Mr. Roman here was charged with violating 18 U.S.C. § 2422(b) after placing an ad seeking out girls of "any age" and, in his communications, with an undercover informant ("UC"), confirmed that "any age" included minors. (*See* ECF No. 28-1, Plea Agreement Attachment A at 1). In his very first text message to the defendant, the UC informed him that the UC's daughter was 11 years old. (*See id.*). When the UC then asked Defendant what he was into, Defendant replied "Anything with her. especially oral. i bet she tastes amazing." (*Id.*). As the conversation progressed, Defendant continued to describe his intended actions with this child: "I like to dress her up. collect

6

her worn panties. i also like girls feet. has she ever been penetrated? . . . does she perform oral?" (*Id*.) Once they began making arrangements for an initial meeting, Defendant discussed his long-term plans for the child, which included "try[ing] anal with her. i wanna turn her into a Lil sex machine". (*Id*. at 2). After the meeting plan was established, Mr. Roman continued his scheme, asking if the UC would allow him to take photos of his abuse of the child and whether there were any gifts that could help ensure the child liked him. (*Id*.). When he was arrested a short time later, he had in his possession both of the gifts that the UC had recommended, as well as sexual aids. (ECF No. 74 at 6).

While this case was Mr. Roman's first criminal conviction, his criminal history includes two 2008 arrests related to unlawful activity with minors. (*See* Presentence Investigation Report ("PSR") ¶¶ 31, 32). In April 2008, he was charged with Wrongful Influence of a Minor, Drug Paraphernalia, and Drug Possession, after the police responded to a complaint of underage consumption of alcohol at a Motel 6 in Hilliard, Ohio. (*Id*. ¶ 31). Authorities investigating the complaint learned that Mr. Roman was with a 15-year-old female at the time whom he supplied with marijuana and alcohol. (*Id*.). He posted bond on these charges and was released. (*Id*.). On May 20, 2008, Defendant was arrested and charged with Unlawful Sexual Conduct with a Minor. (*Id.* ¶ 32). Police officers interviewed two witnesses who were present at the Motel 6 with the defendant and the minor female, who confirmed that the defendant and the minor were in the bathroom of the hotel room smoking marijuana. (*Id.*). According to these witnesses, Defendant and the minor female engaged in sexual conduct in the other bed while they were in the room. (*Id.*). Officers obtained transcripts of the minor's text messages with Mr. Roman's cellular telephone number and found that they were sexually graphic. (*Id.*). Although Mr. Roman was

charged with Unlawful Sexual Contact with a Minor, the minor refused to cooperate with prosecutors and thus the charges were never indicted in Common Pleas Court.  (*Id.*).

Mr.  Roman disagrees with some of these facts, noting, for example, that the Government "fails to inform the Court that the minor in question told [him] she was an adult and had a child . . . [who] was about 6 months old that was with [them] when [he] was arrested."  (ECF No. 75 at 2).  This Court, however, relies on the PSR to determine the facts surrounding Mr. Roman's prior arrests, none of which are in dispute.  *See United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003) ("We can find no reason to require a district court to make independent findings outside the PSR when the facts are undisputed."). Accordingly, Mr. Roman's offense conduct and the nature of his prior arrests confirm that a lengthy term of supervised release is a crucial aspect his sentence. The first factor thus weighs against early termination.

The second factor is "the need for the sentence imposed." 18 U.S.C. § 3553(a)(2). This factor addresses the multiple objectives of the criminal sentence, including the need "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(B)–(D). There can be no question that the nature of Mr.  Roman's criminal history presents a very serious danger to the minor children, who are the object of his criminally deviant actions. And although he began sex offender treatment on March 11, 2024, the treatment provider has opined that "the patient's attitude has been defensive, guarded, and evasive"; that he "continues to be in denial of his sexual offense"; that his "current insight and judgment are poor"; and that "his overall treatment progress has been unsatisfactory." (USPO Letter at 1–2).  Additionally, the U.S. Probation Office has noted that "Mr. Roman did not complete sex offender treatment with Ethos which is an 18-month

program." (*Id.*).  Because Mr. Roman has done nothing to suggest that the danger he poses has diminished, this Court declines to put children and the greater public in danger.  *See United States v. Mathis*, 221 F.Supp.3d 1131, 1134 (S.D. Iowa 2016) (early termination not warranted where defendant's failure to acknowledge importance of sex offender treatment indicated a failure to "fully appreciate the gravity of his offense," raising concerns that he "is at a high risk of recidivating"). Accordingly, the second factor currently weighs against early termination.

The third factor is "the kinds of sentence and the sentencing range established for [Defendant's offense.]" 18 U.S.C. § 3553(a)(4).  Here, the Guidelines range for a term of supervised release for Defendant's offense is five years to life.  (*See* PSR ¶ 69).  Because Defendant here has not completed the statutorily required five years, this factor weighs against early termination of supervised release.

The fourth factor is "any pertinent policy statement" that is (1) "issued by the Sentencing Commission" and (2) "in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(5). Defendant's PSR does not identify any pertinent policy statement, and this Court is unaware of any. Therefore, the fourth factor is neutral.

The fifth factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. § 3553(a)(6). Defendant's supervised release term is within the range of the relevant statute and the Sentencing Guidelines. (PSR ¶¶ 68–69); *see United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013) ("A sentence falling within the Guidelines range is presumptively reasonable; one falling outside the Guidelines range carries no such presumption."). Because terminating Defendant's supervised release would result in a supervised-release period less than the five-year statutory minimum, "this factor heavily

weighs against early termination of supervised release." *See United States v. Threet*, 653 F. Supp. 3d 414, 419 (E.D. Mich. 2023).

The sixth and final factor is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Defendant was not ordered to pay restitution, so this factor is neutral.

In sum, the relevant § 3553(a) factors weigh against early termination of Defendant's supervised-release term.

## B.    Defendant's Conduct

Section 3583(e)(1) directs courts to consider whether a defendant's conduct warrants early termination. Courts have repeatedly found that even model conduct while in prison and on supervised release is not sufficient to warrant early termination under § 3583(e)(1). *See United States v. McDonald*, No. 22-20646, 2024 WL 5337829, at *2 (E.D. Mich. Dec. 20, 2024) ("[M]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." (quoting *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005)); *see also United States v. Medina*, 17 F.Supp.2d 245, 247 (S.D.N.Y. 1998) (unblemished post-incarceration conduct alone "cannot be sufficient reason to terminate the supervise release since, if it were, the exception would swallow the rule").

There is no indication that Mr. Roman has actually violated any supervised release conditions here. His treatment provider, however, has indicated that the defendant is still denying and justifying his offense, and the U.S. Probation Office likewise believes that it is important that Mr. Roman continue with the sex offender treatment.  These opinions enjoy some deference, as the defendant's Probation Officer and sex offender treatment counselor are likely the best sources of information regarding Defendant's overall progress in meeting supervision objectives.  *See*

*United States v. Michienzi*, 508 F. Supp. 161, 162 (N.D. Ohio 1981) ("This Court has great respect for the judgment of the probation staff, and rarely disregards their professional opinions."). The conditions requiring the monitoring and restriction of Mr. Roman's internet use, moreover, were imposed to limit Roman's ability to solicit minors for sexual purposes, which directly relates to the nature of his offense, which involved seeking out children on an online forum for sexual purposes. *See United States v. Phillips*, 370 F. App'x 610, 621 (6th Cir. 2010) (upholding condition requiring probation-officer approval before using computers, the internet, or e-mail); *United States v. Smith*, 564 F. App'x 200, 208 (6th Cir. 2014) (upholding computer and internet limitation requiring monitoring and parole-officer supervision). As the U.S. Probation Office explains, "[w]ithin the past 12-months, Mr. Roman has been addressed by the U.S. Probation Officer regarding his searching/viewing of high-risk content," and "Mr. Roman still has several dynamic risk factors that need to be appropriately addressed through treatment and monitored interventions with the U.S. Probation Office." (USPO Letter at 2). Accordingly, Defendant's conduct does not warrant early termination of supervised release.

### C.    Interest of Justice

Section 3583(e)(1) also directs courts to consider whether the interest of justice warrants early termination. The phrase "interests of justice" is "a peculiarly context-specific inquiry," not susceptible to a "general definition." *See Martel v. Clair*, 565 U.S. 648, 663 (2012). The congressional intent behind supervised release is "to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Consequently, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Id*. Consistent with that legislative purpose, the AO Guide instructs courts to consider "the person's overall progress in meeting supervision objectives," which includes that the person (1) "substantially

11

satisfied the requirements of the court order;" and (2) "demonstrates a willingness and capability to remain lawful beyond the period of supervision." AO Guide § 360.20(b)(1)-(2).

In this case, this Court concludes that early termination of Roman's supervised release term is not in the interest of justice because the purpose of supervised release, i.e., his successful reentry into the community, has not been accomplished. He has served roughly 5% of the supervised release term this Court imposed and 20% of the term mandated by statute. As the U.S. Probation Office's letter also makes clear, Roman "has encountered several challenges that continue to impact his community reintegration" while on supervision." (USPO Letter at 1). Specifically, "Mr. Roman has limited eyesight, is unemployed, experiences mental health issues, lacks responsibility for offense conduct, blames external factors for his behaviors, and lives with his elderly mother who also has health issues." (*Id.*). Continuing supervision not only protects the community by closely monitoring the defendant, but it also provides structure and incentives for the defendant to comply with the conditions imposed. Accordingly, the interest of justice is served by continuing the defendant on supervised release, which serves as a means of rehabilitation, as well as an important protection for the community.

Finally, the defendant's assertion that supervised release conditions are harsher on him because of his physical limitations and the rural area where he lives does not outweigh all of the other factors. Although Defendant residential area has limited transportations, Defendant's probation officer has arranged for him to engage in sex offender treatment sessions via phone until a more sustainable plan can be arranged. (ECF No. 74 at 10). Defendant's location and blindness are undoubtedly challenges, but they are not a basis for terminating his supervised release or modifying the terms at this time.

Accordingly, the interests of justice weigh against early termination.

12

## IV.    CONCLUSION

For the foregoing reasons, this Court **DENIES** the motion for early termination of supervised release. (ECF No. 73).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE:  May 6, 2025**

13